USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/11/2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------X
UNITED STATES OF AMERICA,       :
                               :
                               :          **08 CR 391(VM)**
        -against-             :   **DECISION AND ORDER**
                               :
RAFAEL CAJIGAS,              :
                               :
                Defendant.   :
---------------------------------X
**VICTOR MARRERO, U.S.D.J.:**

By letter dated September 8, 2020 (Dkt. No. 41), defendant Rafael Cajigas ("Cajigas") moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) ("Section 3582"). For the reasons stated herein, the motion is denied.

As a threshold matter, Cajigas states that before making this motion, the warden of his facility denied his request for compassionate release on August 25, 2020. Cajigas does not indicate when he made the request, but because it must have predated August 25, 2020, over 30 days have lapsed since the request was submitted. Cajigas has therefore satisfied the exhaustion requirements of Section 3582 and the Court need not reach Cajigas's arguments seeking waiver of these requirements.

Nonetheless, Cajigas has failed to establish that the circumstances of his case entitle him to the relief he seeks. To grant a sentence reduction under Section 3582, the Court

must find that "extraordinary and compelling reasons warrant such a reduction." Under Section 3582, courts are authorized "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

Cajigas sets forth various circumstances that he argues qualify him for compassionate release. First, he contends that the pandemic poses unique dangers to those who are incarcerated. He argues that COVID-19 is "present" within his facility, FCI Schuylkill; precautions are not possible within the confines of a prison; and the Bureau of Prisons ("BOP") has failed to contain the spread of the virus. Relatedly, he contends that while the public infection data at FCI Schuylkill may not seem significant, widespread testing has not been implemented, rendering the available data inaccurate and creating a "false picture." (See Dkt. No. 41 at 2.)

Second, Cajigas argues that he would be at increased risk of serious illness were he to contract COVID-19 because he is fifty years old, obese, pre-diabetic, Latino, and has a body mass index ("BMI") of 35.

Third, Cajigas contends that because of the pandemic, his family's circumstances have worsened and he is needed at home. He explains that his fiancé is an essential worker,

with underlying health issues of her own, who takes care of their twelve-year-old daughter alone. Their daughter has special needs and requires a great deal of care. If Cajigas were home, he argues, he could assist in his daughter's care and alleviate much of the pressure on his fiancé. In support of this argument, Cajigas submits an affidavit from his fiancé along with his motion, corroborating these assertions.

Lastly, Cajigas makes several arguments under the United States Sentencing Commission's related policy statement (the "Policy Statement").[1] See U.S.S.G. § 1B1.13, cmt. n.1(A)-(D). Cajigas asserts that he has served over 50% of his sentence and has a strong institutional record. He points out that while incarcerated, he has obtained his GED,[2] completed a 500-hour community drug and criminal behavior program, was certified in Suicide Companion for Psychology, worked for UNICOR training inmates who are soon to be released for over six and a half years, tutored for the education department, took parenting classes, and attended AA meetings. Cajigas

---

[1] While the Second Circuit has held that the Policy Statement "is not 'applicable' to compassionate release motions brought by defendants," the Court will nonetheless consider Cajigas's arguments, regardless of whether they are made by reference to the Policy Statement. See Brooker, 976 F.3d at 236 (2d Cir. 2020). Indeed, the Second Circuit has explained that courts may consider the full range of reasons defendants set forth, and nothing "in the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion." Id. at 237.

[2] It is unclear whether Cajigas obtained his GED before or during his term of incarceration. (See "Defense Sentencing Submission," Dkt. No. 31, at 6 (indicating that Cajigas received his GED from Monroe College in 1998).)

argues that he does not pose a threat or danger to the community and further contends that "inmates released through the compassionate release program are less likely to recidivate." (See Dkt. No. 41 at 6.) Relatedly, Cajigas argues that recidivism declines with age.

Cajigas has not provided documentary evidence to support his assertions apart from his fiancé's affidavit regarding the hardship she has experienced in Cajigas's absence. However, even assuming these assertions are true, the Court is not persuaded that Cajigas has established "extraordinary and compelling" circumstances warranting relief.

First, the Court is sympathetic to the fact that incarcerated individuals face heightened risk of COVID-19 infection. However, as of the date of this Order, FCI Schuylkill reports that currently no inmates and only four staff members have tested positive for COVID-19. *COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Nov. 10, 2020). The Court is unpersuaded by Cajigas's argument that potential inaccuracies in the available data entitle him to compassionate release. Cajigas cites United States v. Croft, in which the Government admitted at a hearing in July 2020 that "FCI Schuylkill has not implemented widespread testing for the virus, so we cannot be certain of the true spread of

infection at the prison." No. CR 95-496-1, 2020 WL 3871313, at *2-3 (E.D. Pa. July 9, 2020) (citations omitted). Indeed, as of the date of this Order, out of 1,033 total inmates, only 363 have been tested. Compare *COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (accessed Nov. 11, 2020) (reporting 363 inmates with completed tests at FCI Schuylkill), with *FCI Schuylkill*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/sch/ (accessed Nov. 11, 2020) (reporting 1,033 total inmates at FCI Schuylkill). However, "the mere possibility that the COVID-19 virus could spread within FCI Schuylkill cannot alone provide the 'extraordinary and compelling' reasons that would justify . . . release." Croft, 2020 WL 3871313, at *3 (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).

Second, Cajigas's medical conditions do not establish extraordinary and compelling circumstances warranting compassionate release. To be sure, obesity with a BMI over thirty is among the underlying conditions that the CDC has identified as presenting an increased risk of serious illness. *Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last

updated Nov. 2, 2020). Pre-diabetes, on the other hand, which Cajigas also has, is not among these high-risk underlying conditions. See id. Regardless, in light of his age -- fifty years old -- and the fact that he presents no other health conditions, Cajigas's obesity and pre-diabetes do not satisfy the extraordinary and compelling standard. See, e.g., United States v. Santiago, No. 92 CR 563, 2020 WL 2475068, at *1 (E.D.N.Y. May 13, 2020) (finding no extraordinary and compelling circumstances in the case of a forty-eight year-old defendant who alleged that his obesity, myocardial disease, hyperlipidemia, cardiovascular disease, and history as a smoker placed him at a heightened risk of severe illness from COVID-19).

Nor does the fact that Cajigas is Latino increase his risk of serious illness according to the CDC. *Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, supra. While the pandemic has had a disproportionate impact on minority communities, there is no basis to conclude that this disparity stems from biological predispositions associated with race as opposed to widespread inequality in the distribution of medical care and resources, among other societal factors. See *Coronavirus Disease 2019 (COVID-19): COVID-19 Hospitalization and Death by Race/Ethnicity*, Ctrs. for Disease Control and Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/covid-
data/investigations-discovery/hospitalization-death-by-
race-ethnicity.html  (last updated Aug. 18, 2020) ("Race and
ethnicity are risk markers for other underlying conditions
that impact health -- including socioeconomic status, access
to health care, and increased exposure to the virus due to
occupation."). Thus, while the Court acknowledges the
troublingly disparate impact of the virus on minority
communities, Cajigas's ethnicity is not a condition that
exacerbates his personal risk of serious illness. See United
States v. Lara-Villaruya, No. 3:18 CR 03425, 2020 WL 6395876,
at *4 n.1 (S.D. Cal. Nov. 2, 2020) ("The CDC notes that some
racial and ethnic minority groups are disproportionately
affected by COVID-19, but indicates that inequities in social
determinants of health, rather than risk factors specific to
COVID-19, are what contribute to the increased risk of
infection and complications among these communities.").

   The Court is likewise unpersuaded that Cajigas's
institutional record establishes entitlement to a sentence
reduction under Section 3582. Congress has expressly
instructed that "[r]ehabilitation of the defendant alone
shall not be considered an extraordinary and compelling
reason." 28 U.S.C. § 994(t). While the Court commends
Cajigas's rehabilitative efforts, these efforts do not,

either alone or in combination with the other circumstances he cites, meet the "extraordinary and compelling" standard. See, e.g., United States v. Saleh, No. 93 CR 181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (recognizing a defendant's commendable institutional record but denying release).

Likewise, while the Court acknowledges the significant strain the pandemic has placed on many families, concern for his family's wellbeing does not warrant relief. E.g., United States v. Johnson, No. 09 CR 0272, 2020 WL 3791976, at *2 (D. Md. July 7, 2020) (finding that a defendant who completed over 80% of his sentence and cited concern for himself and his family in light of COVID-19 had not shown "extraordinary and compelling" circumstances). The Court is sympathetic to the strain Cajigas's fiancé is experiencing in his absence. However, Cajigas has made no showing that his fiancé is unable to care for their daughter without him, and indeed she has been doing so over the past few months, albeit with difficulty. See, e.g., United States v. Yoda, No. 15 CR 95, 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (finding that a defendant who moved for compassionate release to care for his father had not established extraordinary and compelling circumstances where his "father does not appear to depend exclusively on [the defendant] for care at this time").

Finally, even if Cajigas could establish extraordinary and compelling circumstances, compassionate release is not supported by the sentencing factors laid out in 18 U.S.C. § 3553(a). See Section 3582 (if the court finds extraordinary and compelling reasons warranting relief, it shall consider "the factors set forth in section 3553(a) to the extent that they are applicable").

On November 3, 2010, Cajigas pled guilty to one count of conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and one count of conspiracy to make false statements, in violation of 18 U.S.C. §§ 371 and 1001. (See Dkt. Minute Entries for 11/3/2010; Dkt. No. 24.) On March 4, 2011, the Court sentenced Cajigas to 300 months' imprisonment followed by three years' supervised release. (See Dkt. No. 35.)

Cajigas argues that he is not a danger to his community and he is unlikely to recidivate. But the Court is unpersuaded by these arguments. While Cajigas ultimately pled guilty to two counts of narcotics conspiracy, the original indictment included one count of murder in furtherance of a drug conspiracy, in violation of 21 U.S.C. § 848(e)(1). At sentencing, the Court adopted the factual recitation in the pre-sentence investigation report ("PSR"), which detailed the

attempted murder Cajigas perpetrated when he "sped onto the sidewalk" severely injuring the target of his attack and killing an innocent bystander. (PSR ¶ 13.) The seriousness and depravity of this conduct reflect a dangerous disregard for human life. The Court finds that a reduction of his sentence at this time, when Cajigas has served barely over 50% of the 300-month sentence imposed, would neither "reflect the seriousness of the offense" nor "protect the public from further crimes of the defendant." See 18 U.S.C. § 3553 (a)(2)(A), (C).

Cajigas cites United States v. Copeland to support his argument that he is unlikely to recidivate. No. 02 CR 01120, 2020 WL 2537250, at *4 (E.D.N.Y. May 19, 2020) ("[D]efendants released through the compassionate release program are less than a tenth as likely to recidivate as the average federal prisoner." (citations and internal quotation marks omitted)). And while defendants granted compassionate release might, on average, be less likely to recidivate, Cajigas's case is unlike the "text-book" example presented in Copeland in which the defendant suffered from numerous and severe medical conditions, including: hypertension, pre-diabetes, hyperlipidemia, latent tuberculosis infection, vitamin D deficiency, chronic hepatitis C, liver necrosis, and aortic atherosclerotic disease. Id. at *1. Further, upon release,

Copeland was 67, had a spotless disciplinary record in prison, had participated in significant rehabilitative programming, and had served nineteen years of a twenty-three-year sentence. Id. at *3.

Nor is Cajigas's case like United States v. Curtis, No. CR 03-533, 2020 WL 1935543 (D.D.C. Apr. 22, 2020), which Cajigas cites to support his argument that he has served a sufficient portion of his sentence. In Curtis, the defendant was released after serving seventeen years of a life sentence, after being diagnosed with multiple sclerosis, quadriplegia, hypertension, esophageal reflux, irritable bowel syndrome, diplopia and glaucoma, loss of 85% of his vision, and inability to walk. Id. at *2. Though Curtis had served only seventeen years, the Court explained that his life sentence was "out-of-step with sentences that would be imposed on similarly-situated defendants today" and his Guidelines range might have been 15.5 to 19.5 years' imprisonment. See id. at *4-5. Thus, the seventeen years Curtis had served was significant by comparison to the updated Guidelines range. By contrast, Cajigas has served just over 50% of a 300-month sentence.

The Court finds that the originally imposed sentence of 300 months continues to be "sufficient, but not greater than necessary," to advance the goals of sentencing, and a sentence

reduction would be inconsistent with these goals. <u>See</u> 18 U.S.C. § 3553 (a).

Accordingly, it is hereby

**ORDERED** that defendant Rafael Cajigas's motion for compassionate release (Dkt. No. 41) is **DENIED**. The Clerk of Court is directed to mail a copy of this Order to Rafael Cajigas, Register Number 70495-054, Schuylkill FCI, Federal Correctional Institution, P.O. Box 759, Minersville, PA 17954-0759, and note service on the docket.

**SO ORDERED.**

Dated: New York, New York
        11 November  2020

Victor Marrero
U.S.D.J.